UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LEONARD LYONS, | * |
| Plaintiff, | * |
| v. | * |
| | * Civil Action No. 1:18-cv-10365-ADB |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION and DITECH FINANCIAL LLC, | * |
| Defendants. | * |

## **MEMORANDUM AND ORDER ON MOTION TO DISMISS**

BURROUGHS, D.J.

Plaintiff Leonard Lyons brings this action against Ditech Financial LLC ("Ditech"), the servicer of his mortgage, and Federal National Mortgage Association ("Fannie Mae"), the holder of his mortgage (collectively, "Defendants"), for a declaratory judgment and monetary damages arising out of Ditech's servicing of Plaintiff's mortgage loan. [ECF No. 26]. The Amended Complaint alleges five counts: a claim under "Consumer Protection Law" against Defendants (Count I); a claim under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 ("RESPA") against Ditech (Count II); a declaratory judgment that Defendants have not strictly complied with Plaintiff's mortgage terms (Count III); a claim for breach of contract against Defendants (Count IV); and, a claim for breach of the covenant of good faith and fair dealing against Defendants (Count V). [ECF No. 26 ¶¶ 21–51 ("Amended Complaint" or "Am. Compl.")]. Pending before the Court is Defendants' motion to dismiss Counts I and II pursuant to Federal Rule of Civil Procedure 12(b)(6). [ECF No. 29]. For the following reasons, the

Defendants' partial motion to dismiss, [ECF No. 29], is GRANTED in part, and Counts I and II are dismissed as against Fannie Mae.[1]

I.  **BACKGROUND**

The following facts are drawn from the Amended Complaint, the well-pleaded allegations of which are taken as true for purposes of evaluating the motion to dismiss. See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014). Certain details are also culled from documents sufficiently referred to in the Amended Complaint or attached thereto. Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 542 F.3d 315, 321 (1st Cir. 2008); Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

Plaintiff purchased his current house at 61 Court Road, Braintree, MA in 2004. [Am. Compl. ¶ 7]. On October 22, 2007, he executed a promissory note for $344,000, secured by a mortgage on his residence.[2] [ECF No. 26-1]. Plaintiff alleges that Fannie Mae is the current holder of his mortgage loan and that Ditech is its current servicer. [Am. Compl. ¶¶ 8–9].

In 2012, Plaintiff filed for bankruptcy. [Id. ¶ 10]. After the bankruptcy case concluded, Plaintiff attempted to make mortgage payments. [Id.]. He received loan documents from Ditech that informed him that no amount was due on the mortgage loan, but his credit report indicated that Ditech had reported the mortgage loan as 90-days delinquent. [Id. ¶¶ 11–12].

---

[1] Ditech filed for Chapter 11 bankruptcy on February 11, 2019, which triggered an automatic stay. [ECF No. 38 at 1–2]. The Bankruptcy Court carved out certain types of litigation from the stay, see [ECF No. 38-2 at 9–11], but Counts I and II do not fall within this carve-out and are thus currently subject to the automatic stay.

[2] The note was payable to Countrywide Bank, FSB. [ECF No. 26-1 at 2]. Mortgage Electronic Registration Systems, Inc. ("MERS") is the mortgagee, as nominee for Countrywide Bank, FSB and its successors and assigns. [Id. at 4]. The Amended Complaint states that Fannie Mae "alleges to be the present holder of Plaintiff's mortgage loan" but does not identify how Fannie Mae acquired the mortgage. [Am. Compl. ¶ 8]. The Amended Complaint also states that Ditech is the servicer of Plaintiff's mortgage but does not identify how that occurred. [Id. ¶ 9].

On October 12, 2016, Plaintiff sent a letter to Ditech with a payment for four months of the outstanding balance of his mortgage loan. [Id. ¶ 13; ECF No. 26-2]. The letter was addressed to Ditech, P.O. Box 94710, Palatine, IL 60094-4710, with copies to Ditech, P.O. Box 6172, Rapid City, SD 57709-6172, and Ditech Financial LLC, 1100 Virginia Drive, Suite 100A, Fort Washington, PA, 19034. [ECF No. 26-2]. The letter contained Plaintiff's name and loan number and indicated the discrepancy between Plaintiff's credit report, which reported a 90-day delinquency on the mortgage loan, and the documents Ditech sent Plaintiff, which stated that there was no balance due on the same mortgage loan. [ECF No. 26-2]. Plaintiff's letter enclosed an "Information Billing Statement" that provided a "Designated Address for Qualified Written Requests, Notices of Error and Requests for Information" under the heading "Other Important Information Regarding Your Account." [ECF No. 29 at 84–85].[3] The "Designated Address" was Ditech Financial LLC, P.O. Box 6176, Rapid City, SD 57709-6176. [Id. at 85]. Plaintiff requested that Ditech "clarify for [him] the status of [his] account, and what steps must be taken to see this resolved." [Id. at 82]. Ditech responded to Plaintiff's October 12, 2016 letter on October 20, 2016, stating that it was looking into the matter and indicating that Plaintiff could expect to receive a written response within 30 days. [Am. Compl. ¶ 14; ECF No. 26-3]. Ditech did not provide any further response. [Am. Compl. ¶ 14].

Plaintiff sent four follow up letters to Ditech between November 2016 and July 2017, each addressed to the same three Ditech locations as the October 12, 2016 letter. [Id. ¶ 16; ECF No. 26-4]. Ditech did not respond. [Am. Compl. ¶ 16]. Instead, on or around August 10, 2017,

---

[3] The contents of Plaintiff's letter, though not attached to the Amended Complaint, may be considered by the Court on a motion to dismiss. See Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000) (noting that courts may consider "the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment").

3

Plaintiff received a notice informing him of his right to cure his mortgage default within 90 days. [Id. ¶ 17; ECF No. 26-5]. According to the notice, the past due amount on the mortgage loan was $37,617.05, [ECF No. 26-5], but this letter did not account for Plaintiff's October 12, 2016 payment on the mortgage, [Am. Compl. ¶ 17].

Defendants' failure to address Plaintiff's concern about his mortgage or to verify Plaintiff's mortgage debt allegedly caused increased service charges and accrued interest on Plaintiff's mortgage loan, damaged his credit score, and required him to spend time and expense addressing the issue. [Id. ¶ 25]. In October 2017, Plaintiff sent Ditech a demand letter under "Consumer Protection Law." [Id. ¶ 19]. Ditech responded in November 2017. [Id. ¶ 20].

On February 2, 2018, Plaintiff filed this action in the Superior Court of Norfolk County. [ECF No. 1-1]. Defendants removed the action to this Court on February 26, 2018. [ECF No. 1]. Defendants later moved to dismiss the complaint, [ECF No. 14], and Plaintiff responded by filing an Amended Complaint on June 22, 2018, [ECF No. 26].

On July 12, 2018, Defendants moved to partially dismiss the Amended Complaint. [ECF No. 29]. Plaintiff opposed the motion on July 26, 2018. [ECF No. 33]. On February 11, 2019, Ditech filed for Chapter 11 bankruptcy, which triggered an automatic stay that prohibits further litigation of Counts I and II as against Ditech at this time. See supra n.1; [ECF No. 38 at 1–2].

## II. LEGAL STANDARD

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff's theory, and draw all reasonable inferences from those facts in favor of the plaintiff. United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). While detailed factual allegations are not required, the complaint must set forth "more than

4

labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and it must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotations and citations omitted). The facts alleged must be sufficient to "state a claim to relief that is plausible on its face." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Twombly, 550 U.S. at 570).

When assessing the sufficiency of a complaint, the Court first "separate[s] the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Next, the Court "determine[s] whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224). "[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Twombly, 550 U.S. at 556). Dismissal is appropriate if a plaintiff has not pled any set of facts entitling him to relief. See Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

## III. DISCUSSION

### A. Count I: Consumer Protection Law

Count I alleges that Defendants violated Massachusetts' "Consumer Protection Law"[4] by repeatedly failing to address Plaintiff's concern about his mortgage loan and refusing to verify his mortgage debt. [Am. Compl. ¶¶ 21–27]. Defendants contend that any "failure to address

---

[4] The Court interprets Plaintiff's references to "Consumer Protection Law" to refer to Mass. Gen. Laws ch. 93A, §§ 2, 9 ("Chapter 93A"), which allows individuals to bring suit when they have been injured by the use of an "unfair or deceptive act[] or practice[] in the conduct of any trade or commerce . . . ."

5

[Plaintiff's] concern" is not an unfair or deceptive business practice. [ECF No. 29 at 14]. They further assert that Plaintiff has failed to sufficiently plead a violation of 940 C.M.R. § 7.08(2)(a) as a predicate for the Chapter 93A claim. [Id. at 14–15]. Plaintiff counters that Defendants' conduct constitutes a "pattern of misconduct" sufficient to rise to the level of an unfair or deceptive business practice. [ECF No. 33 at 10]. Plaintiff also argues that Defendants' failure to verify Plaintiff's debt, regardless of whether it constitutes a violation of 940 C.M.R. § 7.08, is an unfair and deceptive business practice. [Id. at 11–12].

Chapter 93A protects consumers from "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2. "To prove a claim under Chapter 93A, a plaintiff must show 'that a person who is engaged in trade or business committed an unfair or deceptive trade practice and that the [plaintiff] suffered a loss of money or property as a result.'" Saade v. Wilmington Sav. Fund Soc'y, No. 16-cv-11982-IT, 2017 WL 4278395, at *6 (D. Mass. Sept. 26, 2017) (quoting Morris v. BAC Home Loan Servicing, L.P., 775 F. Supp. 2d 255, 259 (D. Mass. 2011)).

A practice may be "deceptive" under Chapter 93A when it has "the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted." Aspinall v. Philip Morris Cos., 813 N.E.2d 476, 488 (Mass. 2004). "Unfair" conduct is not defined. See Okoye v. Bank of N.Y. Mellon, No. CIV.A. 10-11563-DPW, 2011 WL 3269686, at *6 (D. Mass. July 28, 2011). "Massachusetts courts evaluate unfair and deceptive trade practice claims based on the circumstances of each case,' leaving 'the determination of what constitutes an unfair trade practice to the finder of fact, subject to the court's performance of a legal gate-keeping function." Sullivan v. Bank of N.Y. Mellon Corp.,

91 F. Supp. 3d 154, 174 (D. Mass. 2015) (quoting Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 69 (1st Cir. 2009)).

Chapter 93A requires that plaintiffs send prospective defendants a demand letter thirty days before filing suit. See Mass. Gen. Laws ch. 93A, § 9(3). Sending the required demand letter "is not merely a procedural nicety, but, rather, a prerequisite to suit." McKenna v. Wells Fargo Bank, N.A., 693 F.3d 207, 217–18 (1st Cir. 2012) (internal quotation marks and citations omitted). Plaintiff may be exempt from the demand letter requirement, however, if the defendant "does not maintain a place of business or does not keep assets" within Massachusetts." Mass. Gen. Laws ch. 93A, § 9(3). An entity that does not have a place of business in Massachusetts, but nevertheless owns a mortgage on a Massachusetts property is considered to "keep assets" within Massachusetts for purposes of Chapter 93A. See Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 359 (1st Cir. 2013).

As a preliminary matter, it is unclear whether Plaintiff has met the demand requirement concerning his Chapter 93A claim against Fannie Mae. Plaintiff alleges that Fannie Mae is exempt from the demand requirement because it does not have a place of business in Massachusetts. [Am. Compl. ¶ 27]. However, if Fannie Mae is the "holder" of "Plaintiff's mortgage loan" (which this Court interprets to be both the mortgage and the associated note) as alleged in the Amended Complaint, then Fannie Mae holds assets in Massachusetts and is subject to the demand requirement. See Woods, 733 F.3d at 359; see also Arazi v. Saxon Mortg. Servs., Inc., No. 11-cv-11356-RGS, 2011 WL 5519914, at *3 (D. Mass. Nov. 14, 2011) (finding mortgagee not exempt from demand requirement because "[a] recorded mortgage secured by real property located in the Commonwealth is an 'asset[] within the commonwealth' for purposes of Chapter 93A" (quoting Okoye, 2011 WL 3269686, at *4)).

7

Even if Fannie Mae is exempt from the demand requirement, the Amended Complaint does not state a Chapter 93A claim against Fannie Mae. Although the allegations of Count I are styled as referring to both "Defendants," Plaintiff does not allege that he ever sent Fannie Mae a letter concerning his mortgage loan or requesting verification of his mortgage debt; these allegations concern Ditech only. See [Am. Compl. ¶¶ 11–13, 16]. Fannie Mae cannot be engaged in unfair or deceptive business practices for failing to respond to correspondence that it was never sent.

B.  **Count II: RESPA Claim**

Count II alleges that Ditech violated § 2605 of RESPA, which requires a mortgage servicer to address qualified written requests ("QWRs")[5] from borrowers concerning the servicing of their mortgage loan. [Id. ¶¶ 28–35]; see 12 U.S.C. §§ 2605(e), (f). Plaintiff alleges that he sent QWRs to Ditech on four occasions and attaches those letters to his Amended Complaint. [Am. Compl. ¶¶ 13–16; ECF Nos. 26-2, 26-4]. Although Count II is pled only against Ditech, and Plaintiff does not allege that he sent a QWR to Fannie Mae, see [Am. Compl. ¶¶ 28–35], Defendants interpret Count II to include Fannie Mae, see [ECF No. 29 at 11–13].

To the extent that Count II may be interpreted to include Fannie Mae, Defendants seek to dismiss Count II against Fannie Mae as well, arguing that Fannie Mae cannot be directly liable under RESPA because it did not service Plaintiff's loan and that allowing vicarious liability under RESPA for violations by Ditech would be contrary to congressional intent. [Id.]. Plaintiff concedes that Fannie Mae cannot be directly liable under RESPA but responds that RESPA

---

[5] RESPA defines "qualified written request" as "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).

8

allows vicarious liability pursuant to the federal common law of apparent authority because "[i]t makes *no* sense that RESPA [as a consumer protection statute] would impose liability only on the designated servicer of the loan." [ECF No. 33 at 8].

RESPA imposes liability on a "servicer of a federally related mortgage loan" for failing to respond to a QWR. See 12 U.S.C. §§ 2605(e), (f). The statute defines "servicer" as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." Id. § 2605(i)(2). The statute does not address whether mortgage holders may be held vicariously liable for RESPA violations by mortgage servicers when the party servicing the mortgage loan is the agent of the party holding the mortgage loan.

"The First Circuit has not addressed the issue of vicarious liability under RESPA, and other courts are split." Searle v. RBS Citizens, N.A., No. 17-cv-10427-ADB, 2018 WL 1188756, at *5 n.8 (D. Mass. Mar. 7, 2018). Compare Gaydos v. Bank of Am., N.A., No. 1:17-cv-10246, 2019 WL 404031, at *4 (D. Mass. Jan. 30, 2019) (dismissing RESPA claim against Bank of America, N.A. where complaint alleged that servicer was bank's agent because the complaint "does not allege that [Bank of America] ever serviced his mortgage or received a QWR") with Bowen v. Ditech Fin. LLC, No. 2:16-cv-00195, 2017 WL 4158601, at *15 (D. Me. Sept. 19, 2017) (denying motion to dismiss RESPA claim against Fannie Mae where complaint alleged a principal-agent relationship between Fannie Mae and Ditech because of "the uncertainty of the law" on the issue of vicarious liability).

Here, the Amended Complaint does not allege any principal-agent relationship between Fannie Mae and Ditech and provides no details from which a principal-agent relationship could be inferred. The only substantive factual allegation asserted about Fannie Mae is that it is "the present holder of Plaintiff's mortgage loan." [Am. Compl. ¶ 8]. In addition, Count II itself

contains no allegations concerning Fannie Mae. Even if vicarious liability was available under RESPA, a question of law that the Court does not need to decide at present, the Amended Complaint fails to state a claim against Fannie Mae in Count II because it omits the essential factual allegations required for a vicarious liability claim.

## IV. CONCLUSION

Accordingly, Defendants' partial motion to dismiss [ECF No. 29] is <u>GRANTED</u> in part, and Counts I and II are dismissed as against Fannie Mae.

**SO ORDERED.**

March 15, 2019 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE